UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x
                                                  :                     NOT FOR PRINT OR

UNITED STATES OF AMERICA,          :     ELECTRONIC PUBLICATION

                                                  :

          -against-                   :           06-CR-285 (ARR)

                                                  :

GINO GALESTRO,                     :

                                                  :         OPINION AND ORDER

                          Defendant.        :

                                                    :
------------------------------------------------------------------------ x

ROSS, United States District Judge:

     In February 21, 2008, defendant Gino Galestro filed a pretrial motion, relating to a 28-count superceding indictment which had been filed against him in October 2006. That motion raised four points. The first sought dismissal of three counts in the indictment, as well as dismissal of two of the ten racketeering acts alleged in connection with the RICO counts charged in the first two counts, on the ground that they were barred by the terms of a 2004 plea agreement. The second point sought a ruling that statements made by defendant in the course of plea negotiations were inadmissible. The third point sought to dismiss the entire indictment as excessively vague or, in the alternative, an order granting defendant a bill of particulars. The final point sought the disclosure of Brady and Giglio material.

     In April 2008, after defendant's pretrial motion had been fully briefed, the prosecution filed another superceding indictment (hereinafter, the "Sixth Superceding Indictment"), which added 18 counts, 10 racketeering acts and various forfeiture allegations. Accordingly, in May 2008, defendant revised or supplemented his pretrial motion. Defendant's Pretrial Motion in Response to the Sixth Superceding Indictment raises six points, the first four of which largely reiterate arguments made in his prior motion. For example, defendant's first point, which asserts that the substantive extortion charges and forfeiture allegations are excessively vague, is a

modified version of an argument presented in the third point in the original motion. The second point, which requests a bill of particulars, was also formerly contained in Point III of the original motion. The third point is similar to the first point raised in the previous motion, but identifies new counts and addresses issues discussed in court on April 16, 2008. The fourth point, like the fourth point of the original motion, seeks an order compelling the production of <u>Brady</u> material.

The fifth and sixth points of defendant's May 2008 pretrial motion, however, raise new issues. Point V urges this Court to order the government to identify the particular recordings it seeks to use at trial. Point VI argues that the government should be required to disclose recordings and other documents which were created when certain alleged cooperating witnesses were in federal prison.

In addition to addressing the six issues raised in defendant's most recent pretrial motion, this opinion addresses the second argument raised in the initial motion, relating to the admissibility of statements defendant made during plea negotiations. For the reasons explained below, this Court concludes 1) that none of the counts, racketeering acts or forfeiture allegations are unconstitutionally vague and that a bill of particulars is unnecessary;[1] 2) that only Racketeering Act 1 is clearly barred by the 2004 plea agreement; 3) that there is no need at present to compel the disclosure of <u>Brady</u> material; and 4) that defendant's motion for the identification of particular recordings which the government intends to use is moot. In addition, defendant's motion to compel the production of recordings and other documents relating to cooperating witnesses is denied, and defendant's statements made by defendant at the May 5, 2006, plea negotiations are ruled inadmissible.

---

[1]The government is, however, directed to provide further details relating to Count 38 and Racketeering Act 15, both of which relate to an unspecified vehicle which was set afire near Avenue U in Brooklyn.

*VAGUENESS*

Defendant's first argument is that some of the substantive extortion charges and forfeiture counts contained in the indictment are unconstitutionally vague. Specifically, defendant seeks to dismiss twelve substantive extortion counts (9, 11, 13, 15, 17, 19, 21, 23, 28, 30, 35 and 54) and eight Racketeering Acts (4,5,6,7, 9,13, 14 and 20), as well as all of the forfeiture counts. Because the law relating to the substantive counts and Racketeering Acts is different from that pertaining to the forfeiture counts, these counts are dealt with separately below.

*The Substantive Extortion Counts and Racketeering Acts*

Rule 7(c) of the Federal Rules of Criminal Procedure requires that an indictment contain "a plain, concise and definite written statement of the essential facts constituting the crime charged." This provision is designed to satisfy three constitutional requirements: the Sixth Amendment requirement that a defendant "be informed of the nature and cause of the accusation" against him and the Fifth Amendment's requirements that no person be subjected to double jeopardy or tried on a charge not presented to a grand jury. See United States v. Walsh, 194 F.3d 37, 44 (2d Cir. 1999).

It is well settled that an indictment is constitutionally sufficient if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and . . . enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." United States v. Resendiz-Ponce, 549 U.S. 102, ___, 127 S.Ct. 782, 788 (2007) (Hamling v. United States, 418 U.S. 87, 117 (1974). The Second Circuit has repeatedly noted that, to meet these requirements, an indictment need do "little more than . . . track the language of the statute charged and state the time and place (in approximate terms) of the alleged

3

crime."  See, e.g., United States v. Pirro, 212 F.3d 86, 92 (2d Cir. 2000); Walsh, 194 F.3d at 44;

United States v. Tramunti, 513 F.2d 1087, 1113 (2d Cir. 1975).   However, this language itself

"suggests that a valid indictment must provide something more" than approximate dates and

locations, and cannot merely list the statutory elements.  United States v. Urso, 369 F. Supp. 2d

254, 267 (E.D.N.Y. 2005) (emphasis in original).  "[F]or an indictment to fulfill the functions of

notifying the defendant of the charges against him and of assuring that he is tried on the matters

considered by the grand jury, the indictment must state some fact specific enough to describe a

particular criminal act, rather than a type of crime."  Pirro, 212 F.3d at 93.

In arguing that certain substantive extortion counts are unconstitutionally vague,

defendant principally relies on two cases – United States v. Urso, supra, and United States v.

Tomasetta, 429 F.2d 987 (1st Cir. 1970) – in which the courts dismissed counts that contained no

specific facts whatsoever.  In Urso, a defendant, Anthony Basile, sought to dismiss as vague two

counts, the first of which read as follows:

> In or about and between January 2002 and December 2003, both
> dates being approximate and inclusive, within the Eastern District
> of New York and elsewhere, the defendant ANTHONY BASILE,
> together with others, knowingly and intentionally made
> extortionate extensions of credit.

The second count was identical to the first, except that it charged Basile with "knowingly and

intentionally participat[ing] in the use of extortionate means to collect and attempt to collect

extensions of credit," rather than making extortionate extensions of credit.

In holding these counts to be "plainly insufficient," Judge Garaufis found that they failed

"to adequately tie the government to the evidence presented to the grand jury" and did not

"permit Basile to anticipate the acts and conversations that the government [would] assert at trial

violated the statutory prohibition against loansharking."  Id. at 266.  Like the defendant herein,

4

Judge Garaufis relied on Tomasetta, in which the First Circuit dismissed as insufficient an indictment which "alleged that the substantive loansharking offense had been committed in Worcester, Massachusetts on a specific date, but failed to name the victim of the offense, specify the means by which the offense had been committed, or identify the place within Worcester where the alleged criminal act had occurred." Id. (citing Tomasetta, 429 F.2d at 979-80). Judge Garaufis noted that Tomasetta had been cited with approval by the Second Circuit in Sira v. Morton, 380 F.3d 57, 73 (2d Cir. 2004), and was consistent with "the oft-cited mantra that 'the courts of this circuit have consistently upheld indictments that do little more than to track the language of the statute charged and state the time and place in approximate terms . . . .'" Id. However, the two substantive extortion counts against Basile did nothing more than track the statutory language and make vague allegations as to time and place, and Judge Garaufis could find no Circuit cases approving "a loansharking indictment that set forth every critical element of the crime charged in such general terms." Id. at 266-67 (emphasis in original).

Many of the counts which defendant seeks to dismiss as unconstitutionally vague in this case are essentially identical to the counts which Judge Garaufis dismissed in Urso, with one important exception: they name a "John Doe" to whom the extortionate extension of credit was made or upon whom extortionate means were used to collect or attempt to collect the extension of credit. For example, Racketeering Act 5B and Count 11 both allege an extortionate extension of credit to John Doe #2 as follows:

> In or about and between January 2004 and January 2006, both
> dates being approximate and inclusive, within the Eastern District
> of New York, the defendant GINO GALESTRO, together with
> others, did knowingly and intentionally make an extortionate
> extension of credit to John Doe #2 . . . .

The other extortionate extension of credit counts which defendant challenges as vague are

essentially the same as above, except that they allege different dates and different victims. Count 15 alleges an extortionate extension of credit to John Doe #3 between January 2004 and January 2006; Count 19 and Racketeering Act 7B allege extortionate extension of credit to John Doe #4 between January 2004 and July 2006; and Count 28 alleges an extortionate extension of credit to John Doe #6 between December 2004 and January 2006.

Similarly, Count 21 is typical of the extortionate collection of credit counts which defendant claims are unconstitutionally vague. It reads:

> In or about and between January 2004 and July 2006, both dates being approximate and inclusive, with the Eastern District of New York and elsewhere, the defendant GINO GALESTRO, together with others, did knowingly and intentionally participate in the use of extortionate means to collect and attempt to collect an extension of credit from John Doe #4.

The other extortionate collection counts challenged by defendant allege different dates and different victims.[2] However, all of the substantive extortionate collection counts, as well as the larceny by extortion counts, that defendant seeks to suppress differ from the counts suppressed in Urso in that they specify the victim of the alleged crime.

The identification of the alleged victim in the counts which defendant seeks to dismiss in this case supplies the "something more" that was lacking in Urso – the "fact specific enough to describe a particular criminal act, rather than a type of crime." Pirro, 212 F.3d at 93. The

---

[2]Count 13 and Racketeering Act 5D allege extortionate collection of credit from John Doe #2 between January 2004 and January 2006; Count 17 and Racketeering Act 6C charge extortionate collection of credit from John Doe #3 between January 2004 and January 2006; Count 23 alleges extortionate collection of credit from John Doe #5 between June 2004 and July 2005; Count 30 charges defendant with extortionate collection of credit from John Doe #6 between December 2004 and January 2006; and Count 35 alleges extortionate collection of credit from John Doe #7 between May 2005 and July 2005. Count 54 differs from the other extortionate collection counts in that it alleges a specific date – December 28, 2005 – as opposed to a range of dates, and a different place – the District of New Jersey rather than the Eastern District of New York.

government has provided enough "factual particularity to ensure that the prosecution will not fill in elements of its case with facts other than those considered by the grand jury." See Walsh, 194 F.3d at 44. First, as defendant himself concedes, "[i]f the John Does are in fact known to the grand jury, as the government attests, . . . the government would presumably be unable to change its theory of the victims' identities at trial." Memorandum of Law in Support of Defendant Gino Galestro's Pretrial Motion, filed in Response to the Sixth Superceding Indictment ("Defendant's Memo") at 15, n. 2. Second, although the counts do not allege the exact time and location of each extension of credit or attempt to collect through extortionate means, the indictment alleges a specific range of dates.[3] These dates provide further assurances that the prosecution will not try defendant for offenses not previously presented to the grand jury. Moreover, defendant can use those dates and the identity of the victim, when fully established at trial, to interpose a double jeopardy defense if appropriate in future litigation, in much the same way that defendant has used the range of dates set forth in his 2004 plea to argue for dismissal of certain counts in this indictment. See pp. 21-28, below.

The counts which defendant seeks to dismiss are also sufficiently specific to pass

---

[3]Defendant appears to assume that each substantive count refers to a single extortionate extension of credit or a single attempt to collect through extortionate means, and that the government has alleged "extraordinarily lengthy time intervals" in an effort to obscure the precise acts it will allege at trial. Defendant's Memo at 13. That assumption appears predicated on the further assumption that the counts would be duplicitous if "separate criminal acts are contained within each charge." Id. at 15.

Neither assumption is necessarily accurate. The Second Circuit has held "that acts that could be charged as separate counts of an indictment may instead be charged in a single count if those acts could be characterized as part of a single continuing scheme." United States v. Tutino, 883 F.2d 1125, 1141 (2d Cir. 1989). Thus, even a count which alleges multiple acts of extortion over a period of several years may not be duplicitous, if it alleges a single, continuous scheme of extortion. See United States v. Albunio, No. CR-91-0403, 1992 WL 281037 (E.D.N.Y. Sept. 9, 1992). Accordingly, there is no reason to assume that the government is alleging a single act in each count, rather than a series of acts beginning on or about the first date alleged in that count and ending on or about the other date alleged therein.

constitutional muster. The indictment alleges that defendant is a soldier and associate in the Bonanno organized crime family ("Bonanno OCF"), an organization which generates money for its members and associates though various criminal activities, including loansharking. Sixth Superceding Indictment at ¶ 8. The indictment thus implies that defendant participated in the loansharking activity alleged in the indictment – including the extortionate extensions of credit, extortionate collections of credit, and larceny by extortion which defendant seeks to dismiss – in his capacity as a member of the Bonanno OCF, and in conjunction with other members of that organization. The indictment alleges the approximate dates on which those activities took place and, by identifying the victims as John Does, indicates which counts relate to a particular victim.

To be sure, none of the counts is a "model of clarity." However, "[r]ecognizing that particular facts needed in particular cases are obtainable by bills of particular or discovery, [the Second Circuit has] repeatedly refused, in the absence of any showing of prejudice, to dismiss ... charges for lack of specificity" even in such instances. Walsh, 194 F.3d at 45 (quoting United States v. McClean, 528 F.2d 1250, 1257 (2d Cir. 1976)). So long as a count is "minimally sufficient" – as are the counts defendant seeks to dismiss in this case – "a court may look to the entire record, including a bill of particulars or other discovery, to determine whether the defendant has received adequate notice of the specific charges to prepare his defense and protect against double jeopardy." United States v. Mermelstein, 487 F. Supp. 2d 242, 249 (E.D.N.Y 2007).

This Court has carefully examined the discovery provided by the government with respect to each of the counts that defendant seeks to dismiss as vague. As explained below, the Court finds that the government has provided sufficient discovery to permit defendant to prepare

for trial.

First, the government has provided considerable information relating to John Doe #2, the alleged victim of the extortionate extension of credit charged in Count 11 and Racketeering Act 5B, and the extortionate collection of credit charged in Count 13 and Racketeering Act 5D. According to this information, John Doe #2 is the owner of a Staten Island auto body shop who received and made payments on a loansharking loan extended by defendant between January 2004 and January 2006. Specifically, defendant's former co-defendant John ("Little John") Tufarelli, who is alleged to be an associate in the Bonanno OCF, is alleged to have extended a $2,000 loan to John Doe #2 in October 2005 which required John Doe #2 to pay $400 a week. When John Doe #2 fell behind on the payments in late 2005, Tufarelli and a co-conspirator threatened him with BB gun. On another occasion, Tufarelli, another Bonanno OCF associate named Stefan Cicale, and a third co-conspirator went to John Doe #2's house, and had him follow them to a location five blocks away. When John Doe #2 arrived, the co-conspirator grabbed his shirt and Cicale hit him in the eye.

The government's information concerning John Doe #2 does not suggest that defendant personally met with John Doe #2. However, in an April 18, 2008, letter to defendant's counsel, the government represents that defendant discussed this individual in a May 5, 2006, interview with AUSA Joey Lipton and agents. In light of this representation, and the detailed information already provided by the government, this Court concludes that the defendant has adequate notice concerning Counts 11 and 13 and Racketeering Acts 5B and D.

The government has also provided considerable information relating to John Doe #3, the alleged victim of the extortionate extension of credit charged in Count 15 and the extortionate

collection of credit charged in Count 17 and Racketeering Act 6C. According to this information, John Doe #3 is a Staten Island painting contractor who received and made payments on a loansharking loan extended by defendant between January 2004 and January 2006. A co-conspirator allegedly loaned $8,000 to John Doe #3 in November 2005, and Cicale and a co-conspirator collected weekly interest until John Doe #3 stopped making payments. Thereafter, Cicale, another Bonanno OCF associate named Jose Garcia, and others tried to locate John Doe #3 without success by, inter alia, going to his house to confront him.

As with John Doe #2, the government's information concerning John Doe #3 does not suggest that defendant personally met with John Doe #3. However, in an April 18, 2008, letter to defendant's counsel, the government represents that defendant also discussed this individual in a May 5, 2006, interview with AUSA Joey Lipton and agents. In light of this representation, and the detailed information already provided by the government, this Court concludes that the defendant has adequate notice concerning Counts 15 and 17 and Racketeering Act 6C.

The government has not provided as much information concerning John Doe #4, who is alleged to be the victim of the extortionate extension of credit charged in Count 19 and Racketeering Act 7B and the extortionate collection of credit charged in Count 21. However, the government represents that John Doe #4 is a former co-worker of defendant's who received, and made payments on, a loansharking loan between January 2004 and May 2006. This implies that defendant personally extended the loan and collected the payments. Defendant presumably can recall where he was working during the relatively recent period in question and whether he made loans to any former co-workers. Accordingly, even though the information provided with respect to John Doe #4 is not extensive, this Court is satisfied that it is sufficient to permit

defendant to prepare for trial.

The government also has not provided much information concerning John Doe #5, the alleged victim of the extortionate collection of credit charged in Count 23 and the attempted larceny by extortion alleged in Racketeering Act 9. The government identifies John Doe #5 only as a construction contractor in Staten Island from whom defendant sought to compel repayment of a construction-related debt owed to an associate in defendant's crew between June 2004 and July 2005. However, as in the case of John Doe #4, the government's representation implies that defendant was personally involved in collecting on the loan to John Doe #5. Moreover, the government's April 18, 2008, letter to defendant's counsel represents that defendant discussed this individual in a May 5, 2006, interview with AUSA Joey Lipton and agents. In light of this representation and defendant's personal involvement with John Doe #5, this Court concludes that the defendant has adequate notice concerning Count 23 and Racketeering Act 9.

According to information supplied to defendant by the government, John Doe #6 – who is alleged to be the victim of the extortionate extension of credit charged in Count 28, the extortionate collection of credit charged in Count 35, and the larceny by extortion alleged in Racketeering Act 13 – is an associate in defendant's crew who was forced to pay a $10,000 penalty between January 2005 and January 2006 for failing to properly dispose of a car provided to him for some illicit purpose. As with John Doe #4, this information suggests that John Doe #6 was a co-worker of defendant – someone personally known to him. Moreover, the information identifies a specific instance relating to a specific penalty, and implies that defendant either assessed, or was aware of the assessment of, the penalty. Defendant presumably can recall the individuals with whom he worked during the relatively recent period in question and whether

any of them was penalized in the manner described by the government. Accordingly, this Court is satisfied that the information supplied by the government is sufficient to permit defendant to prepare for trial on Counts 28 and 30 and Racketeering Act 13.

According to the information supplied to defendant by the government, John Doe #7– the alleged victim of the extortionate collection of credit charged in Count 35 and the larceny by extortion charged in Racketeering Act #14 – is an individual who worked at a private investigator's office in Queens and from whom defendant sought to compel repayment of a debt owed to a female friend of defendant's between May 2005 and July 2005. Again, the government's information suggests that defendant was personally involved in the effort to collect the debt. Moreover, the fact that the debt was owed to a female friend, and not to defendant or another member of the Bonanno OCF, would make this collection activity distinctive and easier to recall than the routine collection activity relating to Bonanno OCF loans alleged in the indictment.

The information supplied to defendant with respect to John Doe #10, the alleged victim of the extortionate collection of credit charged in Count 54 and the attempted theft by extortion charged in Racketeering Act 20, is similar to that supplied with respect to John Doe #7. The government's information alleges that John Doe #10 is a construction contractor in New Jersey from whom defendant sought to compel repayment of a construction-related debt owed to a fellow inmate at FCI-Fort Dix, in approximately December 2005. These allegations suggest that defendant was personally involved in the collection activity. Moreover, the fact that the debt was allegedly owed to a fellow inmate, rather than to defendant or the Bonanno OCF, would make this collection activity distinctive and easier to recall than the routine collection activity

relating to Bonanno OCF loans alleged in the indictment.

To this Court's knowledge, the government has provided no discovery whatsoever with the respect to the counts alleging that defendant financed extortionate extensions of credit: Count 9 and Racketeering Act 4. However, the dates alleged in Count 9 and Racketeering Act 4 – January 2004 to July 2005 – correspond to the earliest and latest dates alleged in the substantive loansharking counts charged in the indictment. Accordingly, this Court assumes that the government is charging that defendant financed all of the extortionate extensions of credit alleged in the indictment. If this assumption is incorrect, the government is directed to provide defendant and the Court with additional information concerning which extensions of credit defendant is alleged to have financed.

***The Need for a Bill of Particulars with respect to the Substantive Counts of the Indictment***

Rule 7(f) of the Federal Rules of Criminal Procedure provides that a "court may direct the government to file a bill of particulars." The rule itself provides no guidance as to when a bill of particulars should be granted. However, the Second Circuit has repeatedly held that "[a] bill is appropriate to permit a defendant 'to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense.'" <u>United States v. Davidoff</u>, 845 F.2d 1151, 1154 (2d Cir. 1988) (quoting <u>United States v. Bortnovsky</u>, 820 F.2d 572, 574 (2d Cir. 1987)). The decision as to whether to grant a defendant's request for a bill of particulars rests "within the sound discretion of the district court." <u>Id.</u> (citing <u>United States v. Panza</u>, 750 F.2d 1141, 1148 (2d Cir. 1984)).

"The principles governing requests for a bill of particulars are well settled." <u>Id.</u> To

obtain a bill of particulars, a defendant "must show that the charges of the indictment are so general that they do not advise him of the specific acts of which he is accused."  United States v. Savin, No. 00 CR 45 (RWS), 2001 WL 243533, at *2 (S.D.N.Y. Mar. 7, 2001) (citing United States v. Torres, 901 F.2d 205, 234 (2d Cir. 1990).  "Generally, if the information sought by defendant is provided in the indictment or in some acceptable alternate form, no bill of particulars is required."  Bortnovsky, 820 F.2d at 574.

As discussed in some detail above, supra at pp. 9-13, the government has provided defendant with adequate information concerning the extortion-related offenses.  Furthermore, although defendant does not specifically address the other crimes alleged in the indictment, this Court has carefully examined the discovery provided by the government with respect to each of the non-extortion counts.  As explained below, the Court finds that the government has provided sufficient discovery to permit defendant to prepare for trial on these counts and that a bill of particulars is not necessary with respect to any of the substantive counts.

First, the government has already provided considerable information concerning John Doe #1, a delivery truck driver who was allegedly robbed on March 13, 2004, while collecting a payment at Eagle Cheese, a cheese shop located at 320 Avenue U, Brooklyn.  According to information supplied to defendant by the government, John Doe #1 was robbed at gunpoint of $21,000 by Tufarelli and others, who waited outside the shop for the driver to arrive and exit with money.  The proceeds were allegedly split between Defendant, Tufarelli and other co-conspirators.

The government has provided even more information with respect to John Doe #11.  According to the government, this man is an associate of the Colombo organized crime family,

who resides at 908 Annadale Road in Staten Island and who has been the victim of an assault and several arsons, allegedly committed on defendant's orders and in an attempt to drive John Doe #11 from his home. The assault took place on August 28, 2004, when John Doe #11 was allegedly lured out of his house by a man purporting to be interested in a 1995 Jaguar which John Doe #11 was selling. The man then struck John Doe #11 in the face and body, resulting in lacerations to his head and a broken arm.

The first of the arsons, which occurred in the early morning hours of October 7, 2004, resulted in damage to John Doe #11's lawn. Two additional arson incidents occurred November 14, 2004. One fire was set in the driveway in front of John Doe #11's house and extended to the driver's side of a 1999 Cadillac Escalade, apparently bought by John Doe #11 for his wife. This arson, which is also the subject of Racketeering Act 10, damaged the car. The second fire, which is not separately charged in the indictment, started when someone threw a Molotov cocktail on the "first floor entrance roof," causing some damage to John Doe #11's house. Defendant is apparently aware of the identity of John Doe #11, having discussed him during his May 5, 2006, interview with AUSA Joey Lipton and government agents.

John Doe #12 (who is referred to as John Doe #7 in the prior indictment) is a mechanic, who was allegedly beaten with metal pipes by Young and Garcia in his Staten Island autobody shop on the morning of May 12, 2005. The government alleges that Young, Garcia and a co-conspirator conspired, with defendant's approval, to commit the crime in order to force the mechanic to leave the area. The government further alleges that defendant, Young and Garcia allegedly received payment in connection with the assault, which left John Doe #12 hospitalized with injuries to his head and legs.

With one exception, the remaining counts and racketeering acts all refer to specific

victims – <u>e.g.</u>, Bistro Restaurant in the case of Racketeering Act 3 and Counts 7 and 8, or Robert McKelvey in the case of Racketeering Act 11 and Counts 24 through 27 – or to specific items or locations which were the focus of the crimes: the 1989 Mercedes Benz Model 560 automobile that was the subject of the arson and arson conspiracy alleged in Racketeering Act 8 or the house at 215 Hamden Avenue, Staten Island, which was the subject of the arson and arson conspiracy alleged in Racketeering Act 19.  In addition, the government has provided information describing these crimes.  However, to this Court's knowledge, the government has not specifically identified the vehicle which is the subject of Racketeering Act 15 and Count 38, nor provided any details concerning the arson and arson conspiracy allegedly involving the car. Accordingly, this Court directs the government to identify the car involved in Racketeering Act 15 and Count 38, and to provide the same sort of information concerning these crimes as the government has already provided with respect to the other arsons and arson conspiracies charged in the indictment.

### The Forfeiture Counts

Rule 7(c)(2) of the Federal Rules of Criminal Procedure states that "[n]o judgment of forfeiture may be entered in a criminal proceeding unless the indictment or the information provides notice that the defendant has an interest in property that is subject to forfeiture in accordance with the applicable statute."  Similarly, Rule 32.2(a) – which was derived from, and may soon supplant, Rule 7(c)(2), <u>see</u> David A. Schlueter, <u>Federal Rules Alert</u>, 22-WTR Crim. Just. 56 – provides that "[a] court must not enter a judgment of forfeiture in a criminal proceeding unless the indictment or information contains notice to the defendant that the government will seek the forfeiture of property as part of any sentence in accordance with the applicable statute."

Neither of these Rules describes the level of notice to which a defendant is entitled. However, cases interpreting Rule 7(c)(2) have held that the government is "not required to list all forfeitable interests in the indictment, provided the indictment notifies defendants that the government will seek to forfeit all property acquired in violation of RICO" or other applicable statute. United States v. DeFries, 129 F.3d 1293, 1315 (D.C. Cir. 1998) (citing cases, including United States v. Grammatikos, 633 F.2d 1013, 1024-25 (2d Cir. 1980)). The Advisory Committee Notes to the 2000 enactment of Rule 32.2 specifically rely on DeFries, stating:

> As courts have held, subdivision (a) is not intended to require that an itemized list of the property to be forfeited appear in the indictment or information itself. The subdivision reflects the trend in caselaw interpreting present Rule 7(c). Under the most recent cases, Rule 7(c) sets forth a requirement that the government give the defendant notice that it will be seeking forfeiture in accordance with the applicable statute. It does not require a substantive allegation in which the property subject to forfeiture, or the defendant's interest in the property, must be described in detail.

Fed. R. Crim. P. 32.2(a) advisory committee note (2000).

While there are cases stating that forfeiture allegations in an indictment must identify "the assets subject to forfeiture with sufficient specificity to permit the defendant to marshal evidence in their defense," United States v. Cauble, 706 F.2d 1322, 1347 (5th Cir. 1983) (citing United States v. Boffa, 688 F.2d 919, 939 (3d Cir. 1982)), these appear to reflect an outmoded, minority view. The majority of courts have "held that such item-specific notice need not be provided in the indictment itself." Stefan D. Cansella, Asset Forfeiture Law in the United States, § 16-2, at p. 492 (JurisNet, LLC 2007) (citing cases). Rather, the indictment itself "need only inform the defendant [that the government] will be seeking the forfeiture in accordance with the applicable statute." 3 Wright, King & Klein, Fed. Practice and Procedure, Criminal 3d §545

17

(2004). Indictments which contain forfeiture allegations that do no more than track the language of the applicable forfeiture statutes are sufficient. See United States v. Brown, No. 04 CR 159 (NGG), 2006 WL 898043, at *6 (E.D.N.Y. April 4, 2006) (holding that criminal forfeiture allegations which tracked the applicable forfeiture statutes provided adequate notice under Rule 32.2(a)).

In this case, the forfeiture allegations in the indictment paraphrase and cite to the statutory provisions which authorize the forfeiture sought by the government. Paragraphs 138 and 139 of the indictment notify defendant that, if he is convicted of the RICO charges set forth in Counts One and Two, the government will seek forfeiture of all property forfeitable under 18 U.S.C. § 1963(a). Similarly, paragraph 141 of the indictment lists the counts charging offenses for which civil forfeiture of proceeds is expressly authorized in 18 U.S.C. § 981(a)(1)(C), and notifies the defendant that, pursuant to 28 U.S.C. § 2461(c), the government will seek criminal forfeiture of said proceeds as part of the sentence in this case. In addition, paragraphs 140 and 142 notify defendant of the government's intention to seek substitute assets pursuant to 18 U.S.C. § 1963(m) and 21 U.S.C. § 853(p) in the event that defendant takes certain actions or makes certain omissions to prevent recovery of forfeitable property.

These forfeiture allegations give defendant adequate notice that the government will seek the forfeiture of property as part of any sentence in accordance with the applicable statutes. See Fed. R. Crim. P. 32.2(a); Brown, 2006 WL 898043, at *6 . Therefore, defendant's motion to dismiss all forfeiture counts as unconstitutionally vague is denied.

**The Need for a Bill of Particulars relating to the Forfeiture Allegations**

Although item-specific notice need not be provided in the indictment itself, the defendant

is nonetheless entitled to "have the government identify the particular assets that it is seeking to forfeit so that [the defendant] can prepare his defense."  Cansella, <u>Asset Forfeiture Law in the United States</u>, § 16-2, at p. 492.  However, there does not appear to be a consensus in the decided caselaw concerning the timing and manner of the government's disclosure.  For example, at least one court has deemed disclosure through a bill of particulars provided 60 days prior to trial to be sufficient, <u>United States v. Lino</u>, No. 00 CR 632 (WHP), 2001 WL 8356 at *5-*6 (S.D.N.Y. Dec. 29, 2000); another court has found that a bill of particulars provided 30 days before trial to be adequate.  <u>See</u> <u>United States v. Vasquez-Ruiz</u>, 136 F. Supp. 2d 941, 944 (N.D.Ill. 2001).  Other courts have held that no bill of particulars is necessary.  In <u>United States v. Diaz</u>, 190 F.3d 1247, 1257-58 (11th Cir. 1999), the Eleventh Circuit held that the government provided adequate disclosure when, sometime prior to the forfeiture phase of trial, it provided the defendant with a draft of the special verdict form to be presented to the jury.  Similarly, in <u>DeFries</u>, 129 F.3d at 1315, n. 7, the Court of Appeals for the District of Columbia Circuit held that it was unnecessary to specify in a bill of particulars that the government sought forfeiture of a defendant's salary, since the indictment had placed the defendant on notice that the government would seek to forfeit everything subject to forfeiture under the applicable statute.

In this Court's opinion, the timing and manner of the government's disclosure must logically depend on  the nature of the property which the government seeks to forfeit.  If the government seeks forfeiture of specific property, the court must determine whether the government has established the required nexus between the property and the offense, Fed. R. Crim. P. 32.2(b)(1) and the parties may elect to have this issue decided by the jury which found the defendant guilty.  Fed. R. Crim. P. 32.2(b)(4).  The trial on the nexus issue must, for practical

reasons, be held shortly after the jury returns the guilty verdict. Therefore, to avoid delaying the forfeiture phase of the trial, the government must identify prior to trial the specific property it intends to seeks to forfeit.

On the other hand, if the government does not seek specific property, but rather a personal money judgment, the court itself determines the amount of money that the defendant will be ordered to pay. Fed. R. Crim. P. 32.2(b)(1). The defendant is not entitled to have the jury decide the amount of the forfeiture. See United States v. Tedder, 403 F.3d 836, 841 (7th Cir.) (Rule 32.2 does not entitle the accused to a jury's determination on the amount of the forfeiture), cert. denied, 546 U.S. 1075 (2005); see also United States v. Reiner, 393 F. Supp. 2d 52, 56 (D. Me. 2005) (No nexus determination need be made for personal money judgments and, "[w]ith no nexus determination to be made, there is no jury role"). Accordingly, the jury-related time constraints which necessitate pre-trial disclosure in cases where the government seeks specific property are wholly absent in cases in which the government seeks only a money judgment. Rule 32.2 expressly contemplates that the amount of the money judgment can be determined well after trial, 'based on evidence already in the record . . . or, if the forfeiture is contested, on evidence or information presented by the parties at a hearing after the verdict or finding of guilt." Fed. R. Crim. P. 32.2(b)(1).

In its Opposition to Defendant Galestro's Supplemental Pretrial Motions (the "Government's Memo"), the government represents that, "as of now, the government does not intend to seek forfeiture of any specific assets or funds, as opposed to a general money judgment based on the evidence developed at trial." Government's Memo at 2, n.1. Based on this representation, the Court finds no need for a bill of particulars at present. Defendant has

adequate notice from the indictment alone that the government intends to seek to forfeit all monetary proceeds subject to forfeit under the statutes identified in paragraphs 138, 139 and 141 of the indictment, or substitute assets of a value equal to those proceeds.  See DeFries, 129 F.3d at 1315, n. 7.  However, should the government's intentions change with respect to whether to seek forfeiture of specific property, the government must provide defendant's counsel with a list of the specific items it intends to seek to forfeit as soon as possible and, in any event, no less than 30 days prior to the start of trial in this case.

**_THE PRECLUSIVE EFFECT OF DEFENDANT'S 2004 PLEA AGREEMENT_**

The third point in Defendant's Memo alleges that some of the counts and racketeering acts in the Sixth Superceding Indictment are precluded under the terms of his October 2004 plea agreement in United States v. Urso, No. 03-CR-1382 (NGG), a case in which defendant and 27 other individuals – all allegedly members of the Bonanno organized crime family – were charged with racketeering and other offenses.  Under this plea agreement, defendant plead guilty to a single count charging that in or about and between January 1999 and November 2002, defendant had conspired to make extortionate extensions of credit in violation of 18 U.S.C. § 892(a).  As originally drafted by the government, paragraph 6(a) of the plea agreement read as follows:

> 6.     The office agrees that:
>
>> a.     no further criminal charges will be brought against the defendant for the extortionate extension conspiracy from January 1999 to November 2002 charged in Count 13 of the above-captioned superceding indictment, it being understood that this agreement does not bar the use of such conduct as a sentencing enhancement in a subsequent prosecution.

The government's proposed, typewritten agreement was subsequently amended by

1) adding the phrase "or substantive crime" after the word "conspiracy," and 2) substituting

"October 2004" for "November 2002."  These two changes were made by hand and appear to

have been initialed by Greg D. Andres, a Supervising United States Attorney who was one of the

signatories to the Plea Agreement.  See Ex. C to Joel B Rudin's Feb. 21, 2008, Affirmation in

Support of Defendant's Pretrial Motions.  As modified, the plea agreement was executed by

defendant and representatives of the government on October 22, 2004.

Defendant now argues that the provisions of paragraph 6(a) preclude the government

from bringing several of the charges set forth in the Sixth Superceding Indictment.  Specifically,

defendant seeks to dismiss:

1.    Racketeering Act 1, which alleges that defendant conspired
to make extortionate extensions of credit between January
1999 and November 2002;

2.    Racketeering Act 4 and Count 9, which charge defendant
with financing extortionate extensions of credit between
January 2004 and July 2005, in violation of 18 U.S.C.
§ 893;

3.    Racketeering Acts 5A, 6A, and 7A, and Counts 10, 14 and
18, all of which charge defendant with extortionate
extension of credit conspiracies beginning in January 2004
and ending in 2006;

4.    Racketeering Acts 5B and 7B, and Counts 11, 15, and 19,
all of which charge defendant with extortionate extensions
of credit between January 2004 and 2006;

5.    Racketeering Acts 5C and 6B, and Counts 12,16, 20, and
22, all of which charge defendant with extortionate
collection of credit conspiracies in violation of 18 U.S.C.
§ 894(a)(1), beginning sometime before October in 2004
and ending sometime in 2006;

6. Racketeering Acts 5D and 6C, and Counts 13, 17, 21 and 23, all of which charge defendant with extortionate collection of credit in violation of 18 U.S.C. § 894(a)(1), beginning sometime before October in 2004 and ending sometime in 2006; and

7. Racketeering Act 9, which charges defendant with engaging in a larceny by extortion conspiracy, and attempting larceny by extortion, both in violation of New York State law.[4]

The government opposes defendant's application, arguing that the plea agreement 1) was not intended to bar use of any prior crimes as racketeering acts, 2) does not bar any charges alleging violations of sections other than 18 U.S.C. § 892(a), and 3) applies only to crimes alleged to have occurred wholly between November 1999 and October 2004. See Government's Memo at 7.

The law relating to the interpretation of plea agreements is not in dispute. The terms of such agreements are construed narrowly, in accordance with applicable contract law principles. United States v. Ready, 82 F.3d 551, 556 (2d Cir. 1996); United States v. Yemitan, 70 F.3d 746, 747 (2d Cir. 1995). However, for a variety of reasons – including the fact that the government usually drafts such agreements and has "certain awesome advantages in bargaining power" – courts construe plea agreements strictly against the government. Ready, 82 F.3d at 558-59. Thus, "any ambiguities in the agreement must be resolved in favor of the defendant." United States v. Griffin, 510 F.3d 354, 360 (2d Cir. 2007) (quoting United States v. Riera, 298 F.3d 128,

---

[4] The Court notes that defendant's Notice of Motion dated May 15, 2008, lists some counts and racketeering acts that are not mentioned in Defendant's Memo: namely, Racketeering Acts 13, 14, and 20, and Counts 28, 30, 35 and 54. Although the discussion below does not expressly discuss these racketeering acts and counts, it is readily apparent that there is no basis for dismissing any of them. The three racketeering acts all charge larcenies or thefts, rather than violations or conspiracies to violate 18 U.S.C. § 892(a), and the four counts all allege extortionate extensions or collections of credit which took place after October 2004.

133 (2d Cir. 2002)).

In this case, there is considerable dispute regarding what the parties meant when they agreed in paragraph 6(a) that no further "criminal charges" would be brought for the extortionate extension conspiracy or substantive crime. The government insists that this language was meant only to immunize defendant from future prosecution for those offenses, not to prevent the government from using those offenses as racketeering acts. Defendant, however, argues that a predicate act in a RICO indictment constitutes a "criminal charge."

There is ample evidence to support defendant's interpretation. First, as defendant correctly notes, the Second Circuit has referred to the predicate acts alleged in a racketeering count as "charges." See, e.g., United States v. Hamilton, 334 F.3d 170, 183 (2d Cir. 2003) ("The indictment charged [a defendant] with only two predicate acts of racketeering activity."); United States v. Giovanelli, 945 F.2d 479, 493 (2d Cir. 1991) ("the murder and attempted murder predicate acts were by far the most grievous charges the jury found to have been proven against the defendants"). Second, as defendant also notes, the government has used plea agreements which provide that "no further criminal charges" will be brought against a defendant for specific crimes charged in the indictment, but include a proviso stating that it is "understood that [the] agreement does not bar the use of such conduct as a predicate act . . . ." See, e.g., United States v. Dionisio, 503 F.3d 78, 80 n. 1 (2d Cir. 2007); LoCurto v. United States, No. 05-CV-1327 (NGG), 2006 WL 618412, at *12 (E.D.N.Y. Mar. 10, 2006). This language suggests that the government itself recognizes that an agreement not to bring further "criminal charges" with respect to a particular crime can be read as prohibiting the use of that crime as a "predicate act" for RICO purposes.

Although this Court finds defendant's arguments persuasive, it need not find that defendant's interpretation of the term "criminal charges" is correct. Rather, it need only find that defendant's interpretation is plausible in order to find that the term is ambiguous. Here, the Court cannot entirely discount defendant's assertion that the agreement not to bring "future criminal charges" with respect to the extortionate extension conspiracy or substantive crime precluded the government from using the extortionate extension conspiracy or substantive crime as "predicate acts" in racketeering counts. The Court concludes, therefore, that the term, "criminal charges," as used in paragraph 6(a) of the Plea Agreement is ambiguous, and that this ambiguity must be resolved in favor of defendant. See Griffin, 510 F.3d at 360; Riera, 298 F.3d at 133.

For this reason alone, Racketeering Act 1, which alleges that defendant conspired to make extortionate extensions of credit between January 1999 and November 2002, must be dismissed. As defendant correctly notes, Racketeering Act 1 charges a conspiracy identical to the one to which defendant pled guilty in Urso. Indeed, the government has already conceded that Count 15 in the prior indictment – which charged the same crime as does Racketeering Act 1 – should be dismissed because it charges an extortionate extension of credit which occurred wholly within the period between January 1999 and October 2004. See Government's Opposition to Defendant's February 2008 Motion at 3, and n. 3.

This Court finds no ambiguity regarding what the parties meant when they referred to "the extortionate extension conspiracy or substantive crime." Despite the awkward wording of paragraph 6(a), it is obvious that the "extortionate extension conspiracy" was the conspiracy to make extortionate extensions of credit in violation of 18 U.S.C. § 892(a), which had been

charged under Count Thirteen of the indictment in Urso.  The change in the end date of the conspiracy – from November 2002 to October 2004 – served only to ensure that the government would not charge that a separate extortionate extension conspiracy existed during a period between November 2002 and October 2004.

In addition, the term, "substantive crime," when used in connection with a conspiracy, is typically used to describe the crime which is the object of that conspiracy.  See, e.g., Salinas v. United States, 522 U.S. 52, 65 (1997) ("It is elementary that a conspiracy may exist and be punished whether or not the substantive crime ensues . . . ."); United States v. Pinckney, 85 F.3d 4, 8 (2d Cir. 1996) (the government must prove that the intended future conduct that conspirators agreed upon included "all the elements of the substantive crime").  The fact that the phrase "or substantive crime" was inserted directly after the word "conspiracy" strongly suggests that the parties meant to refer to the crime which was the object of that conspiracy – that is, extortionate extension of credit in violation of 18 U.S.C. § 892(a).  Indeed, the context of paragraph 6(a) simply does not permit the inference that the parties meant to refer to any other crime.  The language cannot fairly be read as referring to every crime committed in furtherance of the conspiracy since paragraph 6(a) refers to a single "substantive crime" – not crimes – and makes no reference whatsoever to acts in furtherance of the conspiracy.

For this reason, defendant's motion to dismiss the racketeering acts and counts listed in paragraphs 2, 5, 6, and 7 on pages 22 and 23, supra (i.e., Racketeering Acts 4, 5C and D, 6B and C and 9, and Counts 9, 12, 13, 16, 17, 20, 21 and 23) must be denied.  Racketeering Act 9 alleges violations of New York State law, Racketeering Act 4 and Count 9 charge violations of 18 U.S.C. § 893, and the other racketeering acts and counts listed above allege violations of 18

U.S.C. § 894(a)(1).

The issue of whether the 2004 plea agreement also requires dismissal of the racketeering acts and counts listed in paragraphs 3 and 4 on page 22 (i.e., Racketeering Acts 5A and B, 6A, and 7A and B, and Counts 10, 11, 14, 15, and 19) cannot be determined at this juncture. First, it is not even clear what legal framework should be applied. Defendant argues that a fact-based analysis similar to the sort used in double-jeopardy analysis is necessary to determine whether the extortionate extension of credit conspiracies charged in the racketeering acts and counts listed in paragraph 3 are part and parcel of the conspiracy to which defendant pled guilty in Urso and which is covered by the plea agreement. See Defendant's Memo at 22 (citing United States v. Standefer, 948 F.2d 426, 480 (8th Cir. 1991)). Defendant further argues that such analysis may require examination of numerous factors, such as "the similarities of the criminal offenses charged in successive indictments, the overlap of participants, the overlap of time, the similarity of operations, the existence of common overt acts, the geographic scope of the alleged conspiracies or locations where overt acts occurred, common objectives, and the degree of interdependence between the alleged conspiracies." Id. (quoting United States v. Maslin, 356 F.3d 191, 196 (2d Cir. 2004).

The government has not responded to defendant's legal analysis. Without supplemental briefing on this issue, this Court would not be prepared to rule on whether defendant's suggested approach is correct. Moreover, even if this Court were to decide this legal issue, it would be unable to conduct the analysis suggested by defendant without detailed facts, which are not contained in the record at present. Indeed, the record is even insufficient to permit the Court to determine whether the  extortionate extensions of credit alleged in the racketeering acts and

counts listed in paragraph 4 on page 22 were in furtherance of the conspiracy to which defendant pled guilty in Urso.

This Court sees no reason to engage in the complex legal and factual analysis necessary to resolve this issue. The government has already intimated that it is prepared to supercede the indictment so that it will no longer allege violations of 18 U.S.C. § 892(a) that occurred prior to November 2004 and will only allege conspiracies to violate § 892(a) that began after October 2004. If the government were to supercede the indictment in this manner, it would obviate the need to even consider engaging in the time-consuming and burdensome analysis proposed by defendant. After all, the parties could not conceivably have intended to immunize defendant with respect to criminal acts occurring after his October 22, 2004, plea, and the plea agreement cannot reasonably be read to bar racketeering acts or counts alleging conspiracies or extortionate extensions of credit which occurred wholly outside the time period specified in the plea agreement.

### *THE MOTION TO COMPEL PRODUCTION OF <u>BRADY</u> MATERIAL*

In Point IV of Defendant's Memo, defendant urges this Court to order the government to produce certain information which defendant alleges to be <u>Brady</u> material. Defendant has raised this same issue on several prior occasions in this case. First, in motion papers submitted in October 2007, defendant asked Judge Garaufis to compel the government to disclose statements made by defendant's direct superiors in the Bonanno OCF which 1) indicated their lack of knowledge of the violent crimes charged to defendant in the indictment, 2) their belief that defendant was not involved in violent crime and 3) their lack of knowledge that he was involved with a crew engaged in violent activity. At a November 2, 2007, oral argument, the government

acknowledged that "any evidence in its possession of statements made by individuals with exculpatory knowledge of [defendant's] role in a charged offense" would have to be disclosed to defendant.  See United States v. Galestro, No. 06-CR-285 (NGG), slip op. at 13 (E.D.N.Y. Nov. 12, 2007).  In addition, the government acknowledged the propriety of disclosing statements in which one of defendant's direct superiors expressed knowledge of a violent crime and stated that he had never given defendant permission to commit that crime, saying:

> If the government knew of a witness who said yes, I knew about that murder and I never gave him [the defendant] permission to do that murder, he has a much stronger argument that we should disclose that. *  *  * If there was a specific connection to a speaker and to the event, we should disclose that.

Transcript of Nov. 2, 2007, Oral Argument at 37-38.  The government distinguished this circumstance from instances in which the witness who was unaware of defendant's involvement was not directly above defendant in the chain-of-command, saying:

> To the extent . . . there's a witness out there that says I don't know anything about that murder, . . . there's a lesser argument that's actually material.  That witness is not saying he has any reason to know about that specific crime and was approached and affirmatively said no, you can't do it, or later on scolded the defendant for having not gotten permission.

Id. at 38.  Thus, the government drew a distinction between the materiality of statements by a speaker who had a "specific connection" to defendant and the event at issue – acknowledging, "we should disclose that" – and "general statements" by a speaker lacking such connection that would not, when viewed in context, be in any way probative or exculpatory.  Id.

Satisfied that the government understood its obligation under Brady, Judge Garaufis granted no relief upon defendant's motion to compel, other than to "remind[] the government of its continuing obligation under Brady."  Galestro, slip op. at 13.  Although defendant renewed this argument in his motion filed February 21, 2008, it is the Court's understanding from a

review of the record – including the transcript of the November 2, 2007, proceedings and Judge Garaufis's November 12, 2007, order – that the matter has already been resolved by Judge Garaufis's unequivocal admonition to the government.

Defendant's Memo raises a further <u>Brady</u> issue relating to a letter which the government sent to defense counsel on May 1, 2008. That letter contained only a single sentence, which

read:  In an abundance of caution, the government hereby provides notice that the following individuals may have information favorable to the defense: Tracy Devito, Donna Holtermann, John Jonason, Ray Noble, Roy Raineri, Daryl Rosenblatt, Allan Sebar [and] Daniel Zitofsky.

Letter to Joel Rudin and David Stern from AUSA Winston Y. Chan, dated May 1, 2008. Defendant argues that the disclosure contained in the government's May 1, 2008, letter is "insufficient to satisfy the government's <u>Brady</u> obligations, since many of the individuals on the list may be unwilling to speak to the defense . . . ." <u>Id</u>. Defendant represents that counsel for Messrs. Noble, Rosenblatt and Zitofsky have "indicated that they do not wish their clients to speak to the defense" and that Ms. Devito has "declined to cooperate with a defense investigator." <u>Id</u>. at 25. However, defendant's reply memorandum also indicates that defendant "will attempt to speak to the [remaining] four individuals" and will make "an additional effort to contact counsel for the other four individuals to [attempt to] . . . learn the information that is favorable." Reply Memorandum of Law in Support of Defendant's Pretrial Motions ("Reply Memo") at 6-7.

Although the government may take a narrower view of the implications of the Second Circuit's recent decision in <u>United States v. Rodriguez</u>, 496 F.3d 221 (2d Cir. 2007), than does defendant, the government's opposition to defendant's motion satisfies the Court that the

government retains a firm grasp on its obligations under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963). The government is fully aware that it has a duty under <u>Brady</u> to disclose evidence favorable to the defendant that is material to guilt. <u>Id</u>. at 87. Moreover, <u>Brady</u> information "must be disclosed 'in a manner that gives the defendant a reasonable opportunity either to use the evidence in the trial or to use the information to obtain evidence for use in the trial.'" <u>United States v. Rittweger</u>, 524 F.3d 171, 180 (2d Cir. 2008) (quoting <u>Rodriguez</u>, 496 F.3d at 226).

The government is doubtless also aware that "if the defendant either knew, or should have known, of the essential facts permitting him to take advantage of any exculpatory evidence," <u>Brady</u> is not violated by the government's failure to disclose that evidence. <u>Leka v. Portuondo</u>, 257 F.3d 89, 100 (2d Cir. 1987) (quoting <u>United States v. LeRoy</u>, 687 F.2d 610, 618 (2d Cir. 1982)). Since "[t]he Brady rule is designed to 'assure that the defendant will not be denied access to exculpatory evidence only <u>known to the Government</u>.'" <u>United States v. Rigas</u>, No. 02-CR-1236 (LBS), 2008 WL 144824, at *1 (S.D.N.Y. Jan. 15, 2008) (quoting <u>LeRoy</u>, 687 F.3d at 619) (emphasis added in <u>Rigas</u>), the government need only disclose "information . . . known to the prosecution but unknown to the defense." <u>United States v. Grossman</u>, 843 F.2d 78, 85 (2d Cir. 1988) (quoting <u>United States v. Agurs</u>, 427 U.S. 97, 103 (1976)).

It is neither feasible nor desirable for courts to specify the extent or timing of <u>Brady</u> disclosures. <u>See</u> <u>Rittweger</u>, 524 F.3d at 180. After all, a court does not, and cannot, know what information is in the government's possession. Therefore, courts rely on the prosecution to scrupulously honor its obligations under <u>Brady</u>, bearing in mind the advisability of erring on the side of disclosure in light of the potentially dire consequences of nondisclosure.

In this case, there is no need at present to compel disclosure regarding the information

provided by the eight individuals identified in the government's letter dated May 1, 2008. Defendant's Reply Memo indicates that, as of May 30, 2008, defendant had not yet contacted four of the eight, and was attempting to learn the favorable information communicated to the prosecution by the other four by contacting their attorneys. <u>See</u> Reply Memo at 6-7. Since it is entirely possible that defendant's efforts will prove successful, defendant's motion to compel disclosure regarding these individuals is premature. However, if defendant's efforts prove unsuccessful, he should consult with the government, which may wish to "consider the wisdom of the uncompelled disclosure of such information." <u>See</u> <u>United States v. Trupin</u>, No. 97-CR 97 (LMM), 1999 WL 322656, at *3 (S.D.N.Y. May 20, 1999). If necessary, defendant may file a supplemental submission seeking further disclosures.

### *DISCLOSURE OF SPECIFIC RECORDINGS TO BE USED BY PROSECUTION*

In Point V in Defendant's Memo, defendant requests that this Court direct the government to specify which wiretap recordings the government intends to use against him, and to make timely disclosure if it ultimately decides to use further material contained in consensual records or recorded prison phone calls. Defendant's Memo at 32. The government responds by representing that it has already made the requested disclosures, and that this point is, therefore, moot. Government's Memo at 14-15.

In light of the government's representation, this Court sees no need to act upon defendant's request. While the prosecution may not have any obligation under Rule 16 of the Federal Rules of Criminal Procedure to identify the specific recordings it intends to use as evidence, <u>United States v. Reddy</u>, 190 F. Supp. 2d 558, 561 (S.D.N.Y. 2002), the prosecution appears to recognize that prompt disclosure of those recordings the prosecution has already decided to use will greatly facilitate the timely preparation of this case for trial. Accordingly,

although this Court declines to place any deadline upon the disclosure of recordings the prosecution intends to use, the Court directs that the government apprise defendant, on a rolling basis, of any additional documents it decides to use as soon as that decision is made.

***DISCOVERY RELATING TO ALLEGED COOPERATING WITNESSES***

The final point raised in Defendant's Memo urges this Court to compel disclosure of various recordings and documents in possession of the Bureau of Prisons which relate to four alleged cooperating witnesses. Defendant conclusorily states that these recordings – as well as visitor logs, visiting records, call logs, commissary records and Western Union sender information relating to the alleged cooperating witnesses – are "material to the defense, and thus must be disclosed under Fed. R. Crim. P. 16(a)(1)(E)." Defendant's Memo at 34. In addition, defendant asserts that "for the reasons set forth in Point II(A) of [his] September 4, 2007, discovery brief, Rule 16(a)(1)(B) requires the disclosure of the recordings." Id. Finally, defendant states that the "requested recordings and documents are likely to contain <u>Brady</u> material." <u>Id</u>.

Taking these arguments in reverse order, this Court first notes that there is nothing to suggest that any of the items defendant is seeking constitute <u>Brady</u> material. Rather, defendant is merely speculating that the "requested recordings and documents are likely to contain <u>Brady</u> material." Defendant's Memo at 34. Defendant has not made a "plausible showing" that inspection of the items he seeks will reveal material evidence favorable to him, but seeks to have the prosecution embark on an open-ended "fishing expedition" on his behalf. See <u>United States v. Merlino</u>, 349 F.3d 144, 154-55 (3d Cir. 2003).

Even assuming that the Bureau of Prisons recordings and documents defendant requests contain material evidence favorable to defendant, the record does not permit the Court to

determine that the prosecution is in constructive possession of them.  While an individual prosecutor has "a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case," such as the police, Strickler, 527 U.S. at 280-81 (quoting Kyles v. Whitley, 514 U.S. 419, 437 (1995), the scope of the prosecutor's duty to obtain information from other agencies, such as departments of correction, is "uncertain."  See Chandras v. McGinnis, No. 01 Civ. 2519 (LBS), 2002 WL 31946711, at *7-9 (E.D.N.Y. Nov. 13, 2002).  "[T]he imposition of an unlimited duty on a prosecutor to inquire of other offices not working with the prosecutor's office on the case in question would inappropriately require . . . a monolithic view of government, that would condemn the prosecution of criminal cases to a state of paralysis." United States v. Avellino, 136 F.3d 249, 255 (2d Cir. 1998) (internal quotations and citations omitted).  Therefore, although there may be instances in which it would be appropriate to charge the prosecutor with knowledge of information obtained by prison authorities, the determination of where this would be appropriate appears to turn on the facts of the individual case.  See United States v. Bin Laden, 397 F. Supp. 2d 465, 484 (S.D.N.Y. 2005). Since defendant has not presented any evidence suggesting that prison authorities are part of the "prosecution team" in this case, this Court cannot find that it would be appropriate to impute knowledge of whatever information the Bureau of Prisons may have collected in this case to the prosecutor.

Defendant's conclusory and speculative arguments also provide an inadequate basis for compelling disclosure pursuant to Rule 16 of the Federal Rules of Criminal Procedure.  First, Fed. R. Crim. P. 16(a)(1)(E) requires that pre-trial production of documents within "the government's possession, custody, or control" which are "material to preparing the defense."  In

this case, defendant not only does not controvert the government's argument that it is not in possession of such documents, but also has not made a prima facie showing of materiality. "To establish a showing of materiality, a defendant must offer more than the conclusory allegation that the required evidence is 'material.'" United States v. Robertson, No. 07 Cr. 944 (LTS), 2008 WL 220283, at *2 (S.D.N.Y. Jan. 23, 2008) (quoting United States v. Walker, No. 96 Cr. 736, 1997 WL 327093, at *2 (S.D.N.Y. June 12, 1997)).

In arguing that Fed. R. Crim. P. 16(a)(1)(B) provides a basis for the disclosure he seeks, defendant refers this Court to Section II(A) of his September 4, 2007, discovery brief. However, that brief implicitly recognizes that Rule 16(a)(1)(B), by its express terms, applies only to disclosure of a defendant's own statements. While defendant asserts that some district courts have required disclosure of co-conspirator's statements in circumstances "[w]here non-government-witness co-conspirators have made statements in further of the conspiracy," Memorandum of Law in Support of Defendant's Motion to Compel Disclosure, at 11, there is nothing to suggest that any of the recorded statements which defendant seeks contain any statements in furtherance of the conspiracy.

Accordingly, defendant's arguments do not suggest any basis for compelling disclosure under either Brady or Rule 16 of the Federal Rules of Criminal Procedure.

### ADMISSIBILITY OF DEFENDANT'S MAY 5, 2006, STATEMENTS TO GOVERNMENT

Although defendant does not raise it in his most recent pretrial motion, the second point in defendant's initial pretrial motion argued that statements defendant made in the course of a May 5, 2006, meeting with Assistant United States Attorney Joey Lipton and federal agents are inadmissible under Rule 410 of the Federal Rules of Evidence and Rule 11(f) of the Federal Rules of Criminal Procedure. Rule 410 provides, in pertinent part:

> Except as otherwise provided in this rule, evidence of the
> following is not, in any civil or criminal proceeding, admissible
> against the defendant who made the plea or was a participant in the
> plea discussions:
>
>               \*       \*       \*
>
> (4)     any statement made in the course of plea discussions with
> an attorney for the prosecuting authority which do not
> result in a plea of guilty or which result in a plea of guilty
> later withdrawn.

Rule 11(f) provides that "[t]he admissibility or inadmissibility of a plea, plea discussion, and any related statement is governed by Federal Rule of Evidence 410."

Both parties implicitly recognize that the only issue in determining whether defendant's May 5, 2006, statement is admissible under Rule 410 is whether the statements were made "in the course of plea discussions." Moreover, both parties acknowledge that the issue raises "a factual question that must be determined on a case-by case basis." United States v. Serna, 799 F.2d 842, 848 (2d Cir. 1986).

In this Circuit, discussions between a defendant and the government cannot be construed as "plea negotiations" unless the defendant, "in some way, express[es] the hope that a concession to reduce the punishment will come to pass." United States v. Levy, 578 F.2d 896, 901 (2d Cir. 1978). As the Second Circuit has noted, a defendant who fails to communicate his hope "gives the officer or prosecutor no chance to reject a confession he did not seek." Furthermore, if Rule 410's protection were extended to a defendant harboring a "silent hope," a defendant could "grant retroactively to himself what is akin to use immunity." Id. Accordingly, the Second Circuit has required a defendant to "at least . . . make manifest his intention to seek a plea bargain before he takes the route of self-incrimination." Id. (citing Hutto v. Ross, 429 U.S. 28 (1976)).

The Levy Court did not address the question of "whether and in what circumstances,

36

admissions by a defendant will be suppressed when they are part of a de facto process of plea bargaining even though it is less than formal." Id. Seeking to fill this vacuum, the parties advocate two other Circuit Court's approaches for deciding this difficult question. Defendant urges this Court to utilize the so-called "two-tier approach" pioneered by the Fifth Circuit in United States v. Robertson, 582 F.2d 896, 901 (5th 1978) (en banc), under which a court considers (1) whether the defendant exhibited an actual subjective expectation to negotiate a plea at the time of the discussion, and (2) whether the defendant's expectation was reasonable given the totality of the objective circumstances. Id. at 1366. Defendant notes that the Robertson approach has been expressly adopted by several lower courts in this Circuit. See, e.g., United States v. Mannino, 551 F.Supp. 13, 18 (S.D.N.Y. 1982); United States v. Fronk, 173 F.R.D. 59, 67 (W.D.N.Y. 1997). The government, on the other hand, urges this Court to analogize this case to United States v. Edelmann, 458 F.3d 791 (8th Cir. 2006) (en banc), which held that no plea discussion occurred where (1) the defendant voluntarily contacted and met with the prosecutor; (2) there was, at most, a general discussion of the sentencing guidelines; (3) the defendant sought to avoid indictment altogether, rather than to plead; (4) no specific plea deal was offered; (5) no deadline to plead was ever imposed by the government; and (6) no specific deal was made.

This Court need not determine which, if either, of these approaches to adopt because this is not a case in which defendant left any uncertainty concerning the nature of the proceedings. In a sworn affidavit submitted in support of defendant's pretrial motion, Nicholas Kaizer – the attorney who represented defendant at the May 5, 2006, meeting – states that, a week before the meeting, he told AUSA Lipton that he "thought the provisions of Fed. R. Evid. 401 and Fed. R. Crim. P. 11 would apply" and asked if the government intended to produce a written proffer agreement. Affidavit of Nicholas Kaizer, dated Feb. 19, 2008 (Ex. J to Affirmation of Joel B.

Rudin, Esq., in Support of Defendant's Pretrial Motions) at ¶ 4. Lipton was noncommittal with respect to the proffer agreement, saying only that he would discuss it with his supervisors. Id. Thereafter, Kazier researched the need for a proffer agreement and concluded that reliance on Rule 410 alone might offer defendant more protection than would a written proffer agreement. Id. at ¶ 5.

When Lipton failed to produce a proffer agreement at the start of the May 5 meeting, Kazier informed him that he "considered the meeting that was about to begin to be in furtherance of settlement negotiations, pursuant to Fed. R. Evid. 410 and Fed. R. Crim. P. 11." Id. at ¶ 6. According to Kaizer, AUSA Lipton "remained silent" after Kaizer expressed his understanding of the nature of the meeting, id., causing Kaizer to conclude that defendant's statements at the meeting "could not be used against him in the prosecution of any indictment that might thereafter be filed against him." Id. at ¶ 7. AUSA Lipton does not controvert Kaizer's recollections of the events immediately preceding the meeting, although he recalls that defendant subsequently denied involvement in any violent acts and that plea discussions never actually took place during the meeting. See Affirmation of Joey Lipton, dated Mar. 21, 2008 (attached to Government's Opposition to Defendant's Pretrial Motions) at ¶¶ 6-7.

Since it is undisputed that defendant's counsel clearly articulated his expectation that the parties were about to engage in "settlement negotiations," and that the government remained silent and gave defendant no reason to believe that it had a different understanding, the statements made by defendant at the May 5, 2006, plea negotiations are inadmissible by operation of Fed. R. Evid. 410 and Fed. R. Crim. P. 11. See Levy, 578 F.2d at 901. This ruling is consistent with the ruling of other district courts in this Circuit. See Maninno, 551 F.Supp. 13 (holding that statements made by a defendant after his counsel placed the prosecutor on notice

that he was initiating plea discussions and after the prosecutor failed to reject that prospect were inadmissible under Fed. R. Evid. 410).  Moreover, permitting the government to frustrate a defendant's reasonable, explicit understanding of the nature of a discussion by simply remaining silent would not only be inconsistent with the rationale in <u>Levy</u>, but would undermine the very rationale of Rule 410 – to "promote plea negotiations by permitting defendants to talk with prosecutors without sacrificing their ability to defend themselves if no disposition agreement is reached."  <u>United States v. Barrow</u>, 400 F.3d 109, 116 (2d Cir. 2003).

## *CONCLUSION*

For the reasons stated above, defendant's most recent pretrial motion is denied in all regards except 1) Racketeering Act 1 is dismissed, 2) the statements made by defendant at the May 5, 2006, plea negotiations are ruled inadmissible, and 3) the government is directed to identify the car involved in Racketeering Act 15 and Count 38, and to provide the same sort of information concerning these crimes as the government has already provided with respect to the other arsons and arson conspiracies charged in the indictment.  Defendant's motion is denied in all other respects.

SO ORDERED.


　　　　　/s/　　　　　　　　　　　　　
Allyne R. Ross
United States District Judge

Dated: July 15, 2008
　　　　Brooklyn, New York